**UNITED STATES v. MORGAN et al.**

District Court, E. D. Illinois.
March 13, 1935.

Paul F. Jones, U. S. Atty., of East St. Louis, Ill., and James A. Caffrey, Sp. Atty., of Chicago, Ill., for the United States.

Victor Packman and J. M. Klamon, both of St. Louis, Mo., for defendants.

WHAM, District Judge.

The information, consisting of six counts, charges the defendants with six separate sales of coal in alleged violation of the Code of Fair Competition for the Bituminous Coal Industry, approved by the President of the United States and promulgated under the provisions and authority of title 1 of the Act of June 15, 1933, known as the National Industrial Recovery Act (15 US CA § 701 et seq.), in that said sales were made for a price lower than the fair market price for bituminous coal of standard classification mine run grade as established by said code in and for the territory in which defendants' mine is located. The defendants have moved to quash the information on several grounds, the first of which is that "each count of the information fails to state facts sufficient to constitute a crime under the laws of the United States."

All the counts are similar in form and language, and to quote paragraphs 1 and 4 of the first count will furnish ample basis for the consideration of the question raised by the first ground of defendants' motion:

"That Fred C. Morgan, Ray Morgan and N. L. Rackerd, who are hereinafter referred to and called the defendants, in Zone 2 of the Belleville Producing District, as defined by the Illinois Sub-Divisional Coal Code Authority and the Presidential member thereof, in the County of St. Clair, in the State of Illinois, in the Eastern District of Illinois and within the jurisdiction of this court, at all times hereinafter mentioned, were engaged in interstate commerce in the coal business, that is to say, in the production and original sale of bituminous coal and for the purpose of carrying on said business the defendants there maintained facilities for the production, loading and original sale of said product. * * *

"That heretofore, to-wit: on or about September 17, A. D. 1934, the defendants, at the place aforesaid and within the jurisdiction of this court, did knowingly, wilfully and unlawfully, and in a transaction in and affecting interstate commerce, violate a provision of said code, to-wit: Section I, Article VI thereof, in that the defendants did sell to one William Wade, driver and agent for the Thomas Coal Company of St. Louis, Missouri, in market territory number one, five tons of standard grade mine run coal produced at Number One Strip Mine of the Morgan Coal Company located in Zone 2 of the aforesaid Belleville Producing District, at a price of, to-wit: $1.25 per ton, which said sale was of less than carload lot and was then and there under the approved and published fair market price of, to-wit: $1.95 per ton as fixed and determined in accordance with the provisions of said code for the aforesaid grade and size of coal; which said coal was then and there in the current of interstate commerce from said mine in said Belleville, Illinois, district to the St. Louis, Missouri, consuming market. * * *"

After reading the statute and code involved and the very helpful briefs of counsel, it seems clear to me that the sale of a commodity cannot be an offense against the National Industrial Recovery Act and the codes approved and promulgated thereunder relating to prices, unless it forms a part of a transaction in interstate commerce or unless the sale directly affects and obstructs the free flow of interstate commerce. 15 USCA §§ 701, 703, subds. (b) and (f); United States v. Spotless Dollar Cleaners, Inc., 6 F. Supp. 725 (D. C. N. Y.); United States v. Suburban Motor Service Corp. et al., 5 F. Supp. 798 (D. C. Ill.); Hart Coal

Corporation v. Sparks (D. C.) 7 F. Supp. 16; Richmond Hosiery Mills v. Camp (D. C.) 7 F. Supp. 139; United States v. Kinnebrew Motor Co. (D. C.) 8 F. Supp. 535; United States v. Eason Oil Co. (D. C.) 8 F. Supp. 365; United States v. James W. McAlister, Inc. (D. C.) 8 F. Supp. 529.

From a careful reading of the above-quoted excerpts from the information, it appears that no facts are alleged from which it can be said that the particular sale upon which the charge is predicated formed a part of an interstate transaction. It is not alleged that the coal involved was, in fact, taken from Illinois to Missouri. It is merely said that the coal was sold by the defendants in Illinois "to one William Wade, driver and agent for Thomas Coal Company of St. Louis, Missouri." From this statement it can only be surmised that the coal was taken from the point of sale in Illinois to St. Louis, Mo. It is true that the information charges that the sale in question was "in a transaction in and affecting interstate commerce" and that "said coal was then and there in the current of interstate commerce from said mine in said Belleville, Illinois, district to St. Louis consuming market," but those allegations are conclusions only and cannot form the basis of fact necessary to support a criminal charge, unless supported by adequate allegations of specific facts. The general allegation in the first paragraph that the defendants were engaged in interstate commerce in the coal business without further facts is likewise a conclusion which does not aid the conclusions in paragraph 4.

Can the information be sustained on the theory that it discloses a sale of coal below the code price that directly affected and obstructed the free flow of interstate commerce?

It is not sufficient to constitute an offense that the sale below the price established by a code in a transaction that is intrastate in character may have some bearing on commodity price levels in the general market and thereby indirectly or remotely affect interstate commerce. Every sale of a commodity may be said in some degree to affect the price structure in the general market for commodities of that particular nature. The effect of such sale upon interstate commerce to bring it within the penal sections of the National Industrial Recovery Act must be direct, certain, and substantial. It is not enough that its effect be indirect, remote, inconsequential, or conjectural.

In the information under consideration we find conclusions instead of facts. In order sufficiently to charge an offense under the National Industrial Recovery Act on the theory that a sale in an intrastate transaction so directly affected interstate commerce as to give the federal government jurisdiction over such intrastate transaction, facts, as distinguished from conclusions, from which such direct effect is apparent, must be set forth in the information. This requirement is necessary both on general principles of good pleading in criminal cases and for the further very important reason that the language used in the code in question as well as in other codes under the National Industrial Recovery Act, if given its widest meaning, may be interpreted to cover and invite prosecutions of innumerable transactions and businesses which are entirely beyond the limited power granted the federal government by the so-called commerce clause of the Constitution. If informations or indictments by which prosecutions under said act are begun be not required to allege specific facts sufficient, if proven, to constitute an offense, individuals engaged in transactions and businesses which affect interstate commerce only remotely, if at all, which federal government can have no possible power to regulate, will be subject to constant danger of being brought into court and tried on informations or indictments based upon the general conclusions of the pleader that such transactions affect or are in the current of interstate commerce, which conclusions, in a sense, can apply with a modicum of truth to any commodity sale, however local or isolated in nature. Practically every transaction involving the sale of a commodity at some point of its circumference may be said to touch and affect in some degree the outreaches of the current or stream of interstate commerce. This is far from saying, however, that such a transaction so directly affects interstate commerce as to bring it within the control of the federal government. It may or may not have such effect, depending on the facts. If it does, those facts can and should be made to appear in any information or indictment based thereon. This danger of vexatious and unwarranted prosecutions should not be permitted to exist through any failure of the courts to require in all informations and indictments returned or filed under said law the statement of specific facts which are not only sufficient to advise the defendant of the precise nature of the charge he is called up-

on to meet, but also to·show, on the face of the pleading, that the defendant has been guilty of some act which is within the scope of federal power and an offense against a federal law.

■ The information here under consideration appears to be fatally defective, in that specific allegations of fact do not appear therein from which it can be said the sales complained of either formed a part of interstate commerce or affected interstate commerce so directly as to bring them within the jurisdiction and control of the federal government. This being true, I find it unnecessary to consider the other questions raised by defendants' motion. Defendants' motion must be, and is hereby, sustained. Order may be entered accordingly.